# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 1:19-CR-152 |
| | : | |
| v. | : | |
| | : | **(Judge Mannion)** |
| ERIC SANCHEZ | : | |
| | : | **(Magistrate Judge Carlson)** |
| | : | |

## MEMORANDUM AND ORDER

### I.     Introduction

This case comes before us for consideration of a motion for temporary release of the defendant filed pursuant to 18 U.S.C. § 3142(i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i).

In the instant case, the "compelling reason" which the defendant asserts justifies the defendant's temporary release from pre-trial detention is the COVID-19 pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. This motion is fully briefed by the parties, and we have afforded all parties the opportunity to make evidentiary

1

presentations in support of their respective positions regarding temporary release for the defendant. Therefore, this motion is ripe for resolution.

We acknowledge the gravity of the defendant's concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century of our nation's history. In addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a danger to the community. Having conducted an individualized assessment of the facts and circumstances presented in this case, for the reasons set forth below it is ordered that the motion for temporary release is DENIED.

**II.     Factual Background and Procedural History**

On May 8, 2019, the defendant was charged with distribution and possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). Following the defendant's arrest, the United States moved pursuant to 18 U.S.C. § 3142 to detain the defendant pending trial. Initial proceedings were then conducted in this case on May 14, 2019, and the defendant waived his detention hearing on June 7, 2019.

At the time of these initial proceedings, the probation office prepared a comprehensive pre-trial services report, which provided the following information concerning the defendant's social and medical history, prior history of substance

abuse, and criminal record: The defendant was born and raised in Brooklyn, New York and moved to Lebanon, Pennsylvania in 1996. The defendant has a lengthy history of drug abuse, dating back to age 11 which has followed him to Lebanon and resulted in a number of drug-related charges since 1999. Among these charges are possession of a controlled substance, possession with intent to deliver, drug trafficking, and possession of a firearm in furtherance of drug trafficking.

Notably, there has been a disturbing pattern of criminal recidivism on Sanchez's part in the past. Thus, in August of 2002 Sanchez was sentenced in federal court to 120 months' imprisonment and 5 years of supervised release following his conviction on firearms-related drug trafficking charges. Sanchez completed service of this term of supervised release in March of 2015, but was charge by state officials with drug-related corrupt organizations offenses five months later, in August of 2015. Sentenced in April of 2016 to serve 9-to-23 months imprisonment, according to the federal indictment by January of 2019 the defendant had returned to the distribution of heroin.

Further, while on supervised release for these prior federal charges, the defendant submitted two urine samples which tested positive for marijuana and one specimen that had been diluted. In addition to these charges, it appears as though the defendant has struggled with mental health issues in the past, including an involuntary commitment in 1991 for mental health reasons.

Finally, the government represents that, as a Career Offender, Sanchez faces the potential of a lengthy sentence if convicted and has proffered that the evidence amassed against Sanchez in this case is particularly strong, consisting of a controlled drug buy from Sanchez, a search of his residence, and the defendant's confession. Given this information the pre-trial services report also recommended the defendant's detention based upon a careful evaluation of the following individual characteristics of the defendant: the instant alleged offenses; his criminal history, including prior federal firearm and drug trafficking convictions; and his inability to post bail at the local level.

We then ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the community, and that there was no condition or combination of conditions which could assure the safety of the community or the defendant's appearance in court as required. On this score, we specifically found that the following factors supported the pre-trial detention of the defendant: the weight of the evidence against the defendant is strong, the defendant would be subject to a lengthy period of incarceration if convicted, the defendant's prior criminal history, the defendant's participation in criminal activity while on supervised release, his history of violence or use of weapons, and his history of substance or alcohol abuse.

The instant motion for temporary release does not focus upon or directly challenge any of these initial detention findings or determinations. Instead, the defendant's motion for release rests upon a concern shared by all: the risk of infection due to the current coronavirus pandemic. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease.

In addition to this generalized concern, the defendant cites the following specific and individualized factors which heighten these medical concerns in the instant case: his longstanding kidney disease, a prior diagnosis of asthma, and mental health concerns. The defendant also asserts that there has been a member of staff at Lackawanna County Prison, the correctional facility where the plaintiff is currently housed, who has tested positive for COVID-19, thus unduly increasing the risk to the defendant of becoming infected with this novel virus.

The Government, in turn, opposes this motion, arguing that the prison has taken affirmative steps to combat the spread of COVID-19, including suspending social visits, limiting inmate movement within the facility, and routinely screening inmates and staff for symptoms. Indeed, these affirmative steps have prevented the spread of COVID-19 within the Lackawanna County Prison since no inmates have yet to test positive. In addition, the government points out that the medical concerns

cited by the defendant, including asthma and kidney disease, are not supported by his medical history as being severe or pervasive enough to increase his risk factors for COVID-19. Specifically, the government notes that the defendant's kidney disease appears to have largely been remedied in recent years by the placement of a stent, and his asthma diagnosis, which is over ten years old with no recent resurgences, has not prevented him from continuing to smoke one to two packs of cigarettes per day.

    At the defendant's request, we held another hearing for pre-trial release in this matter on April 8, 2020 to determine whether COVID-19 presents such changed circumstances as to justify home detention for this defendant. At this hearing, the defendant claimed that he is in the process of obtaining an inhaler to better manage his asthma since his arrival at Lackawanna County Prison, but that for the first few months of his confinement, he did not need one. In addition, Defendant's counsel indicated that additional, recent medical records for the defendant are being pursued to fill in some gaps in the existing records. Finally, Defendant's counsel notified us that there is a third-party custodian standing by in the event that we determine that the defendant's release is warranted. Counsel, however, candidly acknowledged that the defendant's kidney condition, which is marked by conic kidney stones, has not been specifically identified by the CDC as a medical condition with is aggravated by COVID-19.

## III. Discussion

### A. Temporary Release Under 18 U.S.C. § 3142

While cast as a motion seeking temporary release under 18 U.S.C. § 3142 (i), this motion is best understood and evaluated in the context of the Bail Reform Act as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released, as detention is "the carefully limited exception." Id.; see also United States v. Salerno, 481 U.S. 739, 755 (1987).
>
> In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Principal among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed" one of these enumerated offenses. 18 U.S.C. § 3142 (e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142 (i). Until recently, there was a relative paucity of case law construing for us what would

constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of COVID-19.

From these cases a few guiding principles have emerged. First, the very nature of the standard prescribed by statute—which requires a showing of some "compelling reason" to warrant temporary release from custody—suggests that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is

9

suffering from a terminal illness or serious injuries. See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No.

19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the court of appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling reasons which now warrant temporary release from custody must take into account the important considerations of public safety and flight which animated the original decision to detain the offender pending trial. Thus, "in considering the propriety of

11

temporary release, the court would need to balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention." United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020). In practice, therefore, a decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."
> § 3142(i)

United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

It is against this statutory backdrop that we evaluate the instant request for temporary release from custody.

### B. The Defendant's Motion for Temporary Release Will Be Denied.

Our analysis of this motion begins with the proposition that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each

individual's particular request for relief." United States v. Roeder, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our careful and impartial application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as: (1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. However, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). In this case, beyond a genuine, but generalized, concern regarding the risks created by COVID-19, the defendant alleges that he suffers from longstanding kidney disease, asthma, and mental health issues.

We must then weigh those specific health concerns against the substantial public safety considerations which led us to order the defendant's detention in the

first instance. In this case, the following factors, unique to the defendant, compelled the decision to detain the defendant as a risk of flight and danger to the community: the weight of the evidence against the defendant is strong, the defendant would be subject to a lengthy period of incarceration if convicted, the defendant's prior criminal history, the defendant's participation in criminal activity while on supervised release, his history of violence or use of weapons, and his history of substance or alcohol abuse.

      Weighing and balancing these countervailing considerations, we conclude that the defendant should not be released. As the government has pointed out, while the defendant has a past diagnosis of asthma, the available medical records indicate that his lungs are clear, and we are not presented with any evidence that this past condition has worsened or become a problem in recent years.[1] Quite the contrary, the defendant has been able to continue his smoking habit unabated, smoking one to two packs of cigarettes per day without any apparent negative side-effects or asthma flares. Indeed, it appears as though this condition has been dormant for several years, arising only in recent months when the defendant has sought an inhaler from

---

[1] We note that the defendant has offered to provide us with a more recent medical history which may support a more severe form of asthma diagnosis. To this end, we deny his motion today without prejudice to the defendant renewing this motion on a more fulsome factual record, should his records reveal an unanticipated, pervasive, or severe asthma condition which places him in particular danger in the Lackawanna County Prison setting.

Lackawanna County Prison to manage symptoms. Moreover, we have found numerous cases from courts who have had the opportunity to consider whether asthma justifies pre-trial release, and the vast majority of courts have determined that it does not. See, e.g., United States v. Christian, 2020 U.S. Dist. LEXIS 60103 (D. Md. Apr. 6, 2020) (denying temporary release on grounds of underlying asthma diagnosis); United States v. Tucker, 2020 U.S. Dist. LEXIS 59516 (D. Md. Apr. 3, 2020) (collecting cases) (severe asthma, high blood pressure and high cholesterol insufficient to justify temporary release); United States v. Pritchett, CR 19-280, 2020 WL 1640280, *3 (W.D. Pa. Apr. 2, 2020) (asthma diagnosis insufficient to grant temporary release); United States v. Crosby, 2020 U.S. Dist. LEXIS 58189 (D. Md. Apr. 2, 2020) (previous diagnosis of pneumonia, asthma, and a need for an albuterol inhaler insufficient to allow temporary release); United States v. Jones, 2:19-CR-00249-DWA, 2020 WL 1511221, *3 (W.D. Pa. Mar. 29, 2020) (hypertension, sleep apnea, and asthma were not sufficient to grant temporary release); United States v. Gileno, 2020 U.S. Dist. LEXIS 47590 (D. Conn. Mar. 19, 2020) (high blood pressure, high cholesterol, asthma, and allergies insufficient to allow temporary release). These cases are particularly significant to our analysis here, given the remoteness of the defendant's diagnosis in the records before us.

In addition, there is evidence that the defendant's kidney problems have been remedied, abated, or managed in recent years due to the placement of a stent, and

that he has not required medical treatment. Furthermore, even if these issues remained unresolved, there is evidence that the defendant's kidney disease would still not justify his release. See United States v. Morris, 2020 U.S. Dist. LEXIS 52690 (D. Minn. Mar. 26, 2020) (denying pretrial release for 66-year-old defendant suffering from diabetes, high blood pressure, high cholesterol and triglycerides, kidney stones, back pain, and hearing loss).

We are likewise unpersuaded that the fact that a member of staff has tested positive at Lackawanna County Prison should justify the defendant's pretrial release. In particular, two judges within the Middle District have recently had the opportunity to consider such arguments and both have been rejected. See United States v. Veras, No. 3:19-cr-10 (M.D. Pa. Apr. 6, 2020) (Mehalchick, M.J.) (denying pretrial release where the defendant's only basis for seeking release was that a member of staff had tested positive for COVID-19); United States v. Mendoza, No. 5:20-cr-11 (M.D. Pa. Apr. 3, 2020) (denying pretrial release where the defendant was young and in good health and the staff member who tested positive for COVID-19 had no contact with the defendant). Like the defendants in these cases, Sanchez has not alleged that he had any contact with this staff member and it appears that the Lackawanna County facility has adopted appropriate measures to contain the spread of this novel virus.

Lastly, we reiterate that courts have generally only allowed for temporary release where a defendant's specific circumstances presented a compelling and

immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is suffering from a terminal illness or serious injuries. See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed). The defendant has not presented evidence of any such serious immediate medical need that would justify his temporary release from Lackawanna County Prison. He has simply not overcome the presumption in favor of his detention. However, "[b]ecause the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020).

## IV. Conclusion

Based upon the above findings, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) will be DENIED without prejudice. An appropriate order follows.

So ordered this 9th day of April 2020.

> */s/ Martin C. Carlson*
> Martin C. Carlson
> United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 19-CR-152** |
| | : | |
| v. | : | |
| | : | **(Judge Mannion)** |
| **ERIC SANCHEZ** | : | |
| | : | **(Magistrate Judge Carlson)** |
| | : | |

## ORDER

In accordance with the accompanying Memorandum Opinion, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) is DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

So ordered this 9th day of April 2020.

              */s/ Martin C. Carlson*
              Martin C. Carlson
              United States Magistrate Judge